UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| OLD CARCO LLC, | : | Chapter 11 |
| (f/k/a Chrysler LLC), *et al.*, | : | Case No. 09-50002 (SMB) |
| | : | (Jointly Administered) |
| Debtors. | : | |

---------------------------------------------------------X

| | | |
|---|---|---|
| TRW AUTOMOTIVE US, LLC, and | : | |
| TRW AUTOMOTIVE HOLDINGS CORP., | : | |
| | : | |
| Plaintiffs, | : | Adv. Proc. No. 14-02055 (SMB) |
| -- against -- | : | |
| | : | |
| OLD CARCO LIQUIDATION TRUST and | : | |
| RHONDA MASQUAT, | : | |
| | : | |
| Defendants. | : | |

---------------------------------------------------------X

## MEMORANDUM DECISION GRANTING
## SUMMARY JUDGMENT TO PLAINTIFF

**A P P E A R A N C E S :**

KLESTADT & WINTERS, LLP
570 Seventh Avenue, 17th Fl.
New York, NY 10018

> Sean C. Southard, Esq.
> Maeghan J. McLoughlin, Esq.

> - and -

BROOKS WILKNS SHARKEY & TURCO, PLLC
401 S. Old Woodward, Suite 400
Birmingham, MI 48009

> Herbert C. Donovan, Esq.
> Michael R. Turco, Esq.

*Attorneys for Plaintiffs*

OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022

> Michael S. Fox, Esq.
> Jordanna L. Nadritch, Esq.
> Matteo J. Rosselli, Esq.

*Attorneys for Defendant Rhonda Masquat*

JONES DAY
222 East 41st Street
New York, NY 10017

> Corrine Ball, Esq.
> Jeffrey B. Ellman, Esq.
> Brett J. Berlin, Esq.

*Attorneys for Defendant Old Carco Liquidation Trust*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      TRW Automotive US, LLC and TRW Automotive Holdings Corp. (collectively, "TRW")

initiated this adversary proceeding against Old Carco Liquidation Trust (the "Liquidation Trust")

seeking a declaration that rights purportedly assigned by the Liquidation Trust to the defendant,

Rhonda Masquat, the class representative in an Oklahoma class action, had already been

extinguished by prior agreement or assigned to New Chrysler, the purchaser of substantially all

of the debtors' assets.  Masquat moved to intervene and to dismiss the adversary proceeding

pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P.

7012(b).  Upon notice to the parties, the Court converted the motion to one for summary

judgment, and for the following reasons, grants summary judgment to TRW.

## BACKGROUND

      The underlying facts are not in dispute.  From 1993 to 2001, Old Carco LLC f/k/a

Chrysler LLC ("Old Chrysler") manufactured and sold certain motor vehicles known as the "LH

platform vehicles" that incorporated steering components manufactured by TRW.  The
components were supplied subject to the general terms and conditions provided in several
purchase agreements with Old Chrysler, which the *Complaint* refers to as the "Supply
Agreements."[1]  The Supply Agreements required TRW to maintain a comprehensive general
liability insurance policy and to name Old Chrysler as an additional insured under the policy.
(*Motion to Dismiss*, Ex. 2 at ¶ 11(a); Ex. 3 at ¶ 11(a).)  The Supply Agreements also required
TRW to indemnify and hold Old Chrysler harmless against "all claims, liabilities, losses,
damages, and settlement expenses in connection with any breach by Seller [TRW] of these
general conditions or for injury or death of any person and damage or loss of any property"
resulting from TRW's "act, omission or negligent work" in fulfilling the orders.  (*Id.*, Ex. 2 at ¶
11(b); Ex. 3 at ¶ 11(b).)

In 2005, Rhonda Masquat initiated a class action against Old Chrysler in Oklahoma state
court (the "Oklahoma Litigation") for breach of express and implied warranties ("Class Claims"),
alleging that the LH platform vehicles were equipped with defective power rack and pinion
steering systems.  (*Complaint* at ¶¶ 4-5.)[2]  Old Chrysler and affiliated entities[3] filed chapter 11
petitions in this Court on April 30, 2009 (the "Petition Date"), automatically staying the
Oklahoma Litigation.

---

[1]    Copies of the Supply Agreements from 1994 and 2000 are attached as Exhibits 2 and 3 to *Rhonda
Masquat's Motion to Dismiss Plaintiffs' Adversary Complaint*, dated Sept. 16, 2014 ("*Motion to Dismiss*"). (ECF
Doc. # 16).  "ECF Doc. #___" refers to the docket in this adversary proceeding, and "ECF/Main Case Doc. #___"
refers to the docket in the bankruptcy case.

[2]    A copy of Masquat's *First Amended Petition*, dated June 28, 2005, is attached as Exhibit A to the
*Complaint.*

[3]    Old Chrysler and related debtor entities will be collectively referred to as "Old Chrysler."

A.    **The Sale of Old Chrysler's Assets**

Prior to the commencement of the bankruptcy cases, Old Chrysler entered into an

agreement with Fiat S.p.A. and New Carco Acquisition LLC (collectively, "New Chrysler") to

sell substantially all of Old Chrysler's operating assets free and clear of liens, claims and

interests to New Chrysler in exchange for the assumption of certain liabilities and the payment of

$2 billion in cash.[4]   By then, Old Chrysler owed secured debt aggregating more than $13 billion,

(*Sale Motion* at ¶¶ 13-15), and additional trade debt of approximately $5.34 billion.  (*Id.* at ¶ 16.)

Shortly after the commencement of the chapter 11 case, Old Chrysler filed the *Sale Motion* to

approve the transaction.  Among other things, the motion sought to establish procedures for

competitive bidding (the "Bidding Procedures") and the assumption and assignment of executory

contracts and unexpired leases (the "Contract Procedures") in conjunction with the sale.  The

Court approved the Contract Procedures along with Bidding Procedures by order dated May 7,

2009.[5]

To the extent pertinent to the pending motions, the *Bidding Procedures Order* required

Old Chrysler to identify the executory contracts and unexpired leases it intended to assume and

assign (the "Designated Agreements") and provide notice to the counterparties.  (*Id.* at ¶ 19(a)-

---

[4]        *Motion of Debtors and Debtors in Possession, Pursuant to Sections 105, 363 and 365 of the Bankruptcy
Code and Bankruptcy Rules 2002, 6004 and 6006, for (I) an Order (A) Approving Bidding Procedures and Bidder
Protections for the Sale of Substantially All of the Debtors' Assets and (B) Scheduling a Final Sale Hearing and
Approving the Form and Manner of Notice Thereof; and (II) and Order (A) Authorizing the Sale of Substantially All
of the Debtors' Assets, Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing the
Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and
Related Procedures, and (C) Granting Certain Related Relief,* dated May 3, 2009 ("*Sale Motion*"), at ¶ 41
(ECF/Main Case Doc. # 190.)

[5]        *See Order Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002,
6004 and 6006, (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B)
Authorizing the Debtors to Provide Certain Bid Protections, (C) Scheduling a Final Hearing Approving the Sale of
Substantially All of the Debtors' Assets and (D) Approving the Form and Manner of Notice Thereof,* dated May 7,
2009 ("*Bidding Procedures Order*") (ECF/Main Case Doc. # 492).)

(c).)  The Designated Agreements were among the "Purchased Assets."  (*See* Master Transaction

Agreement, dated as of Apr. 30, 2009 (the "Purchase Agreement"), at § 2.06(a) (identifying

"Assumed Contracts" as Purchased Assets).)[6]

The Purchased Assets also included "the claims and causes of action listed on Section

2.06(q) of the Company Disclosure Letter."  (Purchase Agreement at § 2.06(q).)  Section 2.06(q)

of the Company Disclosure Letter identified for assignment all claims and causes of action

"arising under or related to an Assumed Contract" or "subject to Section 2.07(i) of the Master

Transaction Agreement, against any party to an Assumed Contract that is a supplier…with whom

the Purchaser and/or its subsidiaries expects to have an ongoing commercial relationship…."

(*Article II Company Disclosure Letter to Master Transaction Agreement*, as amended May 31,

2009).)[7]  Under section 2.06(j) of the Purchase Agreement, the Purchased Assets included "all

defenses, counterclaims, rights of recovery, rights of setoff and rights of recoupment, in each

case only to the extent primarily related to the Purchased Assets or the Assumed Liabilities," and

section 2.07(i) excluded "all of Sellers' defenses, counterclaims, rights of recovery, rights of

setoff and rights of recoupment that are not described in Section 2.06(j)."  The net effect of these

provisions was that New Chrysler purchased all claims, including defenses, counterclaims, rights

of recovery and rights of setoff and recoupment related to the Assumed Contracts with a supplier

like TRW and Old Chrysler retained all other defenses, counterclaims, rights of recovery, rights

of setoff and rights of recoupment.

---

[6]      A fully executed copy of the Purchase Agreement is attached as an exhibit to the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures and (III) Granting Related Relief*, dated June 1, 2009 ("*Sale Order*") (ECF/Main Case Doc. # 3232).

[7]      The *Article II Company Disclosure Letter* is attached as Annex A to the Purchase Agreement.

5

On May 15, 2009, Old Chrysler filed an Assignment Notice designating certain supplier agreements,[8] including its contracts with TRW. (*See Assignment Notice*, Annex B, at 36.) The Addendum to the *Assignment Notice* stated that Old Chrysler was designating all agreements with the supplier unless stated otherwise, including "all contracts, purchase orders or similar agreements providing for the sale or provision of goods or services to the Debtors, and all related modifications, amendments, supplements, addenda and restatements thereof, related memoranda of understanding, ancillary agreements thereto and any and all similar agreements." The Contract Procedures required the non-debtor party to object in writing. (*Bidding Procedures Order* at ¶ 19(g).) Objecting counterparties were obligated to meet and confer in good faith with Old Chrysler and New Chrysler, (*id.*), and unresolved objections would be considered by the Court at an omnibus hearing on objections to assumption and assignment. (*Id.* at ¶ 19(h).) Designated Agreements were deemed assumed and assigned upon resolution of an objection either by agreement of the parties or by order of the Court approving an assumption and assignment. (*Id.* at ¶ 19(j).) Subject to satisfaction of the conditions relating to resolution of cure or assignment disputes in ¶ 19(j), Old Chrysler was deemed to have assumed and assigned the Designated Agreement as of the date of and effective only upon the closing date of the sale. (*Id.* at ¶ 19(k).)

Following a three-day sale hearing, the Court granted the *Sale Motion*, *In re Chrysler*, 405 B.R. 84, 113 (Bankr. S.D.N.Y. 2009), and entered the *Sale Order*. Among other things, the *Sale Order* authorized and directed the transfer of all Purchased Assets, (*id.* at ¶ 9), and approved the assumption and assignment of the Designated Agreements, which it referred to as the

---

[8]       *Notice of Filing of Schedule of Certain Designated Production Supplier Agreements and Cure Costs Related Thereto*, dated May 15, 2009 ("*Assignment Notice*"), Annex B (ECF Doc. # 848).

"Assumed Agreements," to New Chrysler, subject, however, to the Contract Procedures,

"including the resolution of any Section 365 Objection…." (*Id.* at ¶ 25.)  The *Sale Order* also

provided for the retention of jurisdiction by the Court to "interpret, implement and enforce the

terms and provisions" of the order and the Purchase Agreement.  (*Id.* at ¶¶ 43, 59.)  The sale

closed on June 10, 2009.

**B.    The *Cure Agreement***

TRW filed an objection to the *Assignment Notice*.[9]  The latter had listed the cure amount

as $27,213,759.39.  (*Assignment Notice,* Annex B, at 36.)  TRW did not object to the assumption

and assignment but objected primarily to the proposed cure.  It stated that the *Assignment Notice*

did not identify the orders and contracts being assumed and assigned – although Old Chrysler

had subsequently informed TRW that it intended to assume and assign all of the contracts with

TRW – or how the cure was calculated.  (*TRW Objection* at ¶¶ 1-2.)  TRW contended that the

cure amount was higher.  (*Id.* at ¶ 4.)

TRW stated that the business people were working on a "reconciliation" that had not

been completed, (*id.* at ¶ 1), and understood that "the Cure Costs proposed in the TRW Notice

would be reduced by amounts for certain disputed debits or claims to which TRW objects."  (*Id.*

at ¶ 2.)  It sought confirmation that once the reconciliation was completed, it would have no

further liability on account of any pre-closing claims:

> To the extent Debtors are permitted to reduce the Cure Amount by the pre-
> petition claims asserted by the Debtors against TRW, TRW seeks confirmation
> that upon such payment, TRW shall not have any liability to Debtors or Purchaser

---

[9]    *Limited Objection of TRW Automotive U.S. LLC to the Debtors Motion Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 for an Order Authorizing the Assumption and Assignment Of Certain Executory Contracts and Unexpired Leases and the Notice of Filing of Schedule of Certain Designated Supplier Agreements and Cure Costs Related Thereto*, dated May 26, 2009 ("*TRW Objection*") (ECF/Main Case Doc. # 2214).

for any such claims arising under or in connection with the Agreements prior to
Closing.

(*Id.* at ¶ 2 n.3.)

On June 18, 2009, after the closing date of the sale but while TRW, Old Chrysler and
New Chrysler were still negotiating, New Chrysler filed a notice confirming numerous
Designated Agreements.[10]  New Chrysler listed the TRW contracts and a cure amount of
$29,063,270.  (*June 18 Notice,* Ex. A.)  The Designated Agreements specifically excluded five
TRW-related purchase orders, Nos. O3264042, O4243267, O7526033, O8552026 and O8552027.
(*Id.*, Ex. A.)  The Addendum to the *June 18 Notice* contained the same language as the
Addendum to the *Assignment Notice.*  Thus, except for the five excluded purchased orders, Old
Chrysler was assuming and assigning to New Chrysler "all of the agreements . . . relating to the
supply of goods and services to the Debtors."

On June 26, 2009, the three parties executed a letter agreement modifying the terms and
conditions of the Designated Agreements with TRW on a going forward basis.  (*Letter from
Ronald E. Kolka and Douglas J. Doran to John Plant*, dated June 26, 2009 (the "*Cure
Agreement*").)[11]  The *Cure Agreement* confirmed that Old Chrysler had assumed and assigned to
New Chrysler the "purchase orders and all clauses that are governed by the Debtors' current
terms and conditions and any other signed agreements . . .  to which TRW Automotive Inc. or
any of its Affiliates and any Debtor are a party (any such contract or lease designated by the
Debtors, an 'Agreement')" as of June 10, 2009.  (*Cure Agreement* at p. 1.)  Paragraph 5 of the

---

[10]      *Notice of (I) Assumption by Debtors and Assignment to Purchaser of Certain Executory Contracts and
Unexpired Leases and (II) Cure Costs Related Thereto*, dated June 18, 2009 ("*June 18 Notice*") (ECF/Main Case
Doc. # 4089).  A copy of the *June 18 Notice* is also attached as Exhibit C to the *Complaint.*

[11]      A copy of the *Cure Agreement* is attached as Exhibit C to *Plaintiff's Response in Opposition to Motion to
Dismiss*, dated Oct. 24, 2014 ("*TRW Response*") (ECF Doc. # 29).

*Cure Agreement*, which is critical to the parties' dispute, confirmed that with one exception, the

parties' agreement satisfied all of the pre-closing claims between them:

> 5.     The full payment of the Undisputed Cure Amount in accordance with the terms of the Bidding Procedures Order and this letter agreement, and… the full payment of Disputed Cure Amounts that become Undisputed Cure Amounts, *shall constitute full and complete satisfaction of all claims the Debtors and TRW may have against each other, arising under or in connection with the Agreement(s) prior to the closing of the Sale Transaction (the "Closing"), except for unknown claims against TRW under the Agreements in the following categories: warranty, product liability, recall or campaign indemnification, and intellectual property infringement indemnification.* Except as set for in this paragraph, upon such payment, neither the Debtors nor the Purchaser on the one hand, nor TRW on the other hand, shall have any liability for any claim arising under or in connection with the Agreement(s) prior to the Closing.

(*Id.* at 3 (emphasis added).)

## C.     Masquat Moves for Stay Relief

Meanwhile, Masquat's class action lay dormant. On November 19, 2009, she moved for

relief from stay to continue prosecuting the Oklahoma Litigation. (*Motion of Rhonda Masquat*

*for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362*, dated Nov. 19, 2009, at ¶ 1

(ECF/Main Case Doc. # 5989).) The motion was resolved through a stipulation and agreed order.

Old Chrysler consented to relief from the stay for the limited purpose of allowing Masquat to

pursue the proceeds of any insurance policy procured by a manufacturer, who was not identified

in the motion, that named Old Chrysler as an additional insured and covered the claims asserted

in the Oklahoma Litigation. (*Stipulation and Agreed Order Granting Rhonda Masquat, as Class*

*Representative, Limited Relief from the Automatic Stay*, dated Jan. 6, 2010 ("*Stipulation*"), at ¶ 2

(ECF/Main Case Doc. # 6166).) In return, Masquat agreed to waive any right to file a proof of

claim in the bankruptcy case on the basis of the claims asserted in the Oklahoma Litigation. (*Id.*

at ¶ 3.)

**D.       Confirmation of the *Plan* and Creation of the Liquidation Trust**

The Court confirmed Old Chrysler's *Second Amended Joint Plan of Liquidation* ("*Plan*")

on April 23, 2010.[12]   Among other things, the *Confirmation Order* authorized Old Chrysler to

enter into the "Liquidation Trust Agreement,"[13] and transferred to and vested in the Liquidation

Trust all of the property of the estate.   (*Id.* at ¶ 23; *accord Plan* at Art. IV(A)(1), (D).)

Transferred property included Old Chrysler's causes of action and rights and benefits under any

"Postpetition Agreement," (*Plan* at Art. IV(E)), which was defined as any valid contract or

agreement entered into by Old Chrysler on or after the Petition Date.   (*Plan* at Art. X(A)(171).)

The Trust was authorized to collect, administer, and liquidate transferred property, make

distributions to allowed claims, and resolve disputed claims and causes of action.   (*Plan* at Art.

IV(B)(3)(a).)

The *Confirmation Order* also provided that the Court would retain jurisdiction over the

matters set forth in Article VIII of the *Plan*.   Article VIII of the *Plan* provided that the Court

retained jurisdiction after the effective date to:

> 3.       Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

> 4.       Hear and determine any disputes relating to Postpetition Agreements assigned to the Liquidation Trust pursuant to Section IV.E, including any disputes relating to the Purchase Agreement;

> …

---

[12]       *Order Confirming Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession, as Modified*, dated Apr. 23, 2010 ("*Confirmation Order*") (ECF/Main Case Doc. # 6875).)   A copy of the *Plan* is attached as Annex I to the *Confirmation Order*.

[13]       A copy of the Form of Liquidation Trust Agreement is attached as Annex B-1 to the *Notice of Filing of Plan Exhibit X.A.93C and Revised Plan Exhibits X.A.142, X.A.143 and X.A.189*. (ECF/Main Case Doc. # 6787).

      6.     Decide or resolve any motions, applications, adversary proceedings, contested or litigated matters and any other matters pending before the Bankruptcy Court…and either grant or deny any motions or applications involving any Debtor, the Liquidation Trust, the Liquidation Trustee or the Litigation Manager that may be pending on the Effective Date or brought thereafter;

…

      14.     Resolve any matter relating to the sale, liquidation, abandonment or other disposition of any Liquidation Trust Assets….

(*Plan* at Art. VIII(A).)

The *Plan* went effective on April 30, 2010.  (*Notice of (A) Entry of Order Confirming Second Amended Joint Plan of Liquidation of Debtors and Debtors in Possession, as Modified and (B) Occurrence of Effective Date*, dated May 1, 2010, at ¶ 2 (ECF/Main Case Doc. # 6980).)

**E.**     **The *TRW Decision***

Having apparently determined that TRW failed to procure insurance coverage for Old Chrysler and that TRW's policies did not cover the Class Claims, Masquat filed an action against TRW in the United States District Court for the Western District of Oklahoma seeking a declaration that TRW was obligated to indemnify Old Chrysler under the Supply Agreements for any judgment in the Oklahoma Litigation ("Indemnification Claim").  The District Court dismissed the action, ruling that under Michigan law, which governed the Supply Agreements, a right to indemnity does not accrue until the underlying liability of the indemnitee becomes fixed. Since Old Chrysler's liability had not yet been determined, Masquat's Indemnification Claim was premature.

 Following the District Court's ruling, Masquat returned to state court and moved for summary judgment against Old Chrysler in the Oklahoma Litigation.  The Oklahoma state court granted the motion on October 2, 2013.  (*Order Granting Plaintiff's Motion for Summary*

*Judgment*, dated Oct. 2, 2013, at 16.)[14]  Before the state court rendered its decision, TRW filed a

motion in this Court seeking to enjoin Masquat from proceeding to judgment and a declaration

that any judgment in the Oklahoma Litigation would be void for any purpose other than as a

prerequisite to recovery against an insurance policy.  (*Motion to Enforce and Prevent Further*

*Violation of Prior Order*, dated Aug. 9, 2013 (ECF/Main Case Doc. # 8201).)  TRW asserted

that Masquat's use of a judgment to pursue the Indemnification Claim against TRW violated the

express terms of the *Stipulation*, which created a carve-out from the injunction imposed by the

*Confirmation Order.*

TRW's motion omitted one critical piece of information.  For reasons it has never

explained, it did not inform the Court, and possibly Masquat, of the *Cure Agreement,* or its

position asserted in this adversary proceeding that Old Chrysler, by a combination of the *Sale*

*Order* and *Cure Agreement,* had released or assigned the Indemnification Claim to New Chrysler.

In a memorandum decision dated November 8, 2013, the Court denied the motion,

holding that TRW was not a party or a third-party beneficiary to the *Stipulation* and was not

protected by the terms of the *Confirmation Order.*  Therefore, TRW lacked prudential standing

to enforce either the *Stipulation* or the *Confirmation Order*.  *In re Old Carco LLC*, 500 B.R. 683,

691-92 (Bankr. S.D.N.Y. 2013) ("*TRW Decision*").  The Court also ruled that the motion failed

on the merits, explaining that the *Stipulation* and the injunction provisions in the *Confirmation*

*Order* did not affect Masquat's right to proceed against a third party.  Unaware of the *Cure*

*Agreement* and the issues that it raised, the Court noted that the Indemnification Claim vested

---

[14]        A copy of the state court's decision is attached as Exhibit 1 to the *Masquat Motion to Dismiss.*

solely in the Liquidation Trust, and concluded that Masquat could only assert claims against

TRW based on its direct liability to the class in the Oklahoma Litigation.  *Id.* at 693.

## F.    The Adversary Proceeding

Following the *TRW Decision*, the Liquidation Trust assigned all of its claims, if any,

against TRW arising from the Supply Agreements to Masquat ("TRW Claims").[15]  (*Assignment

of Claim,* dated June 4, 2014.)[16]   Having obtained a judgment against Old Chrysler, Masquat

reasserted the Indemnification Claim against TRW in the United States District Court for the

Western District of Oklahoma.  In response, TRW commenced this adversary proceeding against

the Liquidation Trust, seeking once again to head off the parallel proceeding in Oklahoma.

The *Complaint* includes two counts seeking alternative declaratory relief.  Count One

requests a declaratory judgment that the TRW Claims, including the Indemnification Claim,

were extinguished by the *Cure Agreement.*  (*Complaint* at ¶ 38.)  Count Two seeks a declaration

that even if the TRW Claims were among the "unknown" claims excluded from the release in

paragraph 5 of the *Cure Agreement* (the "Excepted Claims"), the Excepted Claims were assigned

to New Chrysler.  (*Id.* at ¶ 45.)

Masquat successfully moved to intervene, (*Order Granting Rhonda Masquat's Motion

to Intervene Pursuant to Rule 7024 of the Federal Rules of Bankruptcy Procedure*, dated Nov. 17,

2014 (ECF Doc. # 39)), and filed the *Motion to Dismiss*.  Relying on Michigan law, she

contended that the Indemnification Claim was an Excepted Claim under the *Cure Agreement*

---

[15]     The TRW Claims are called the "Potential Claims" in the *Complaint.*

[16]     A copy of the *Assignment of Claim* is attached to a notice of transfer of claim filed on the docket of the
main bankruptcy case.  (*Transfer of Claim Other Than for Security*, dated June 13, 2014 (ECF/Main Case Doc. #
8304).)

because it had not accrued at the time of execution, and was, therefore, an "unknown" claim as a matter of law.  (*Motion to Dismiss* at ¶¶ 19-20.)  Masquat also argued that the Court had expressly ruled in the *TRW Decision* that Old Chrysler retained the Indemnification Claim.  (*Id.* at ¶ 25.)  Finally, Masquat contended that the Bankruptcy Court was "not the proper forum" to adjudicate the dispute and argued that the Court should "reject TRW's request to relocate the venue of this dispute" by dismissing the proceeding.  (*Id.* at ¶ 35.)

In response, TRW argued that the Indemnification Claim was not an Excepted Claim because it was not "unknown" at the time of the *Cure Agreement*.  (*Plaintiff's Response in Opposition to Motion to Dismiss*, dated Oct. 24, 2014 ("*TRW Response*"), at ¶ 30 (ECF Doc. # 29).)  TRW also argued that the Excepted Claims were assigned together with the Supply Agreements to New Chrysler and nothing in the *Cure Agreement* stated otherwise.  (*Id.* at ¶¶ 19-20.)  With respect to Masquat's reliance on the *TRW Decision*, TRW argued that the Court was unaware of the *Cure Agreement* and did not consider the assumption and assignment of the Supply Agreements.  (*Id.* at ¶ 27.)

In her reply, Masquat restated her arguments in support of dismissal.  She also disputed TRW's standing to bring this adversary proceeding, (*Rhonda Masquat's Reply in Further Support of Motion to Dismiss Plaintiff's Adversary Complaint*, dated Nov. 7, 2014 ("*Masquat Reply*"), at ¶ 5 (ECF Doc. # 36)), citing the *TRW Decision*'s ruling that TRW lacked standing to assert claims under the *Stipulation* and enforce the terms of the *Confirmation Order*.[17]  (*Id.* at ¶¶ 1-2.)

---

[17]    The standing argument is meritless and needs no further discussion.  The *TRW Decision* involved TRW's effort to enforce the *Stipulation* to which it was neither a party nor a third-party beneficiary.  In this adversary proceeding, TRW is asserting its rights under the *Cure Agreement* and the *Sale Order* as to which it was a party.

During the initial hearing on the *Motion to Dismiss*, the Court raised the issue of its post-confirmation jurisdiction to hear the dispute, and directed the parties to provide supplemental briefing on the issue. (Transcript of the hearing held Nov. 13, 2014, at 17:6-15 (ECF Doc. # 47.) Both sides submitted supplemental memoranda, and not surprisingly, they disagreed over the Court's subject matter jurisdiction.[18]

After reviewing the pleadings and the various documents submitted by the parties, the Court informed the parties that it would treat Masquat's motion to dismiss as a motion for summary judgment, and that upon such consideration, it might grant any relief consistent with Rule 56(f) of the Federal Rules of Civil Procedure.[19] (*Notice and Order Pursuant to Fed. R. Civ. P. 12(d) and 56(f)*, dated Mar. 9, 2015 (ECF Doc. # 50).) The Court gave the parties the opportunity to present additional materials. TRW submitted additional materials, including an *Affidavit of Douglas J. Doran,* sworn to Mar. 20, 2015 ("*Doran Affidavit*").)[20] Doran signed the *Cure Agreement* on behalf of New Chrysler, and stated his understanding that New Chrysler intended that the assigned Supply Contracts were assumed and assigned in their entirety including the rights identified in paragraph 5 of the *Cure Agreement*. (*Doran Affidavit*, at ¶¶ 7,

---

[18]    Following the close of the additional round of briefing, TRW submitted a letter from counsel for New Chrysler addressed to counsel for the Liquidation Trust that criticized the Liquidation Trust's assignment to Masquat. The letter asserted that all claims arising under the Supply Agreements, including the "unknown" claims referred to in paragraph 5 of the *Cure Agreement*, were assigned to New Chrysler as part of the sale. (*Letter from Brian D. Glueckstein, Esq. to Jeffrey B. Ellman, Esq.*, dated Dec. 11, 2014. A copy of the letter is attached as Exhibit A to the *Plaintiffs' Supplemental Statement Regarding Newly Discovered Information and in Further Support of Opposition to Motion to Dismiss*, dated Dec. 17, 2014. (ECF Doc. # 48). New Chrysler did not, however, seek to intervene in this adversary proceeding.

[19]    Rule 56(f) provides:

(f) **JUDGMENT INDEPENDENT OF THE MOTION**. After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

[20]    The *Doran Affidavit*  is attached as Exhibit F to the *TRW Summary Judgment Brief.*

8.)  After obtaining an extension, Masquat submitted a reply that challenged the probative value

of the *Doran Affidavit* and reiterated her earlier arguments.

## DISCUSSION

A.    **Subject Matter Jurisdiction**

Before considering the summary judgment motion, the Court will address its post-

confirmation jurisdiction.  The bankruptcy court's subject matter jurisdiction originates with 28

U.S.C. § 1334.  Section 1334(a) grants the district court original jurisdiction over all bankruptcy

cases, and § 1334(b) grants the district court original but not exclusive jurisdiction over all civil

proceedings arising under title 11 or arising in or related to cases under title 11.  Civil

proceedings arising under title 11 or arising in a case under title 11, *i.e.*, "core" proceedings,

invoke substantive rights under title 11 or rights that could only arise in the context of a

bankruptcy case.  *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d

154, 162-63 (3d Cir. 2004).  "Related to" or "non-core" proceedings are those whose outcome

might have a "conceivable effect" on the estate.  *Publicker Indus., Inc. v. United States* (*In re

Cuyahoga Equip. Corp.*), 980 F.2d 110, 114 (2d Cir. 1992); *Pacor, Inc. v. Higgins* (*In re Pacor,

Inc.*), 743 F.2d 984, 994 (3d Cir. 1984).

The district court may refer all cases and proceedings within its bankruptcy jurisdiction to

the bankruptcy court.  28 U.S.C. § 157(a).  The United States District Court for the Southern

District of New York first referred its bankruptcy jurisdiction to this Court pursuant to its *Order*,

No. M10-450, (S.D.N.Y. July 10, 1984), and following the Supreme Court's decision in *Stern v.

Marshall*, 131 S.Ct. 2594 (2011), issued an amended order of reference.  *See Amended Standing

Order of Reference,* No. M10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

Although section 1334 does not expressly limit the bankruptcy court's post-confirmation jurisdiction, it is settled law that the bankruptcy court's jurisdiction "shrinks" once a chapter 11 plan is confirmed. *Penthouse Media Grp. v. Guccione* (*In re Gen. Media*), 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005). A party invoking the bankruptcy court's post-confirmation jurisdiction must meet two requirements. First, the plan must provide for the retention of jurisdiction over the dispute. *Hosp. and Univ. Prop. Damage Claimants v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 7 F.3d 32, 34 (2d Cir. 1993). Second, the matter must have a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement." *Resorts Int'l*, 372 F.3d at 168-69; *Gen. Media*, 335 B.R. at 73.

Here, the *Plan* retained jurisdiction over the proceeding commenced by TRW. Its claim relates to the assumption and assignment of the Supply Agreements, (*see Plan*, Art. VIII(A)(3)), it concerns the post-petition *Cure Agreement*, (*see id,*, Art. VIII(A)(4)), the Liquidation Trust is a defendant in the adversary proceeding, (*see id.*, Art. VIII(A)(6)) and Masquat's rights depend on the Liquidation Trust's ownership of and ability to transfer the TRW claims. (*See id.*, Art. VIII(A)(14).)

The proceeding also bears a close nexus to the *Plan* and the bankruptcy case because it affects the implementation, execution and administration of the *Plan*, the *Confirmation Order*, the *Sale Order* and the *Cure Agreement*, which was executed in connection with the sale. As noted, Masquat's ability to pursue the Indemnification Claim against TRW depends entirely on whether the Indemnification Claim was transferred to and vested in the Liquidation Trust under the *Plan* and the *Confirmation Order;* the Liquidation Trust could only assign what it had to Masquat. The answer depends, in turn, on the terms of the *Sale Order*, which ostensibly

assigned the Indemnification Claim to New Chrysler, and the *Cure Agreement*, which arguably carved it out from that assignment.

Furthermore, a bankruptcy court has post-confirmation jurisdiction to interpret and enforce its prior order, and especially when the order explicitly retains jurisdiction to do so. *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009). Here, the *Sale Order* expressly retained jurisdiction to "interpret, implement and enforce the terms and provisions" of the *Sale Order* and the Purchase Agreement. Accordingly, the Court has subject matter jurisdiction over this dispute.[21]

## B.    The Motion for Summary Judgment

Having concluded that the Court has subject matter jurisdiction, I turn to the motion. Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by FED. R. BANKR. P. 7056, governs summary judgment motions. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).[22] The moving party bears the initial burden of showing that the undisputed facts entitle it to judgment as a matter of law. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). If the movant carries this initial burden, the nonmoving party must set forth specific facts that show triable issues, and cannot rely on pleadings containing mere allegations or denials. *Matsushita Elec. Indus. Co. v.*

---

[21]    This conclusion does not apply to the third-party claim asserted by the Liquidation Trust against Masquat. (*Third Party Complaint*, dated Sept. 5, 2014 (ECF Doc. # 12).) The third-party claim against Masquat for legal fees and expenses incurred in connection with this adversary proceeding is based on the parties' July 2014 agreement to assign the TRW Claims.

[22]    The motion is governed by the amendments to Rule 56 that became effective on December 1, 2010. Although some language has changed, the standard for granting summary judgment remains unchanged and the amendments will not "affect continuing development of the decisional law construing and applying these phrases." FED. R. CIV. P. 56 advisory committee's note (2010).

Pg 19 of 24

*Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In deciding whether material factual issues exist, all ambiguities must be resolved and all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita Elec.*, 475 U.S. at 587. Finally, Rule 56(f) permits the Court to grant summary judgment to the nonmovant following appropriate notice and a reasonable opportunity to respond. The Court granted the parties the required notice and opportunity in its March 9, 2015 order.

The current dispute turns for the most part on the meaning of the *Cure Agreement*, and accordingly, the present motion presents a question of contract interpretation. When asked to interpret contractual language, the question is "whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir. 2002)). Ambiguity presents a question of law. *Maverick Tube*, 595 F.3d at 466. A contract is ambiguous if it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Int'l Multifoods*, 309 F.3d at 83 (internal quotation marks omitted); *accord Cont'l Ins. Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010); *Maverick Tube*, 595 F.3d at 466. An agreement is not ambiguous if it has a definite and precise meaning, and unambiguous language does not become ambiguous because a party urges a different interpretation that strains the language beyond its ordinary meaning. *Maverick Tube*, 595 F.3d at 467. Where the dispute concerns a provision of the contract, the Court must consider the contract "as a whole to ensure that undue emphasis is not placed upon

particular words and phrases." *Bailey v. Fish & Neave*, 868 N.E.2d 956, 959 (N.Y. 2007);

*accord Maverick Tube*, 595 F.3d at 467.[23]

TRW is entitled to summary judgment if the Indemnification Claim was a "known" claim

that was satisfied and extinguished (as alleged in Count One) or an "unknown" claim that was

assigned to New Chrysler (as alleged in Count Two).   I conclude that the Excepted Claims

referenced in paragraph 5 were assigned to New Chrysler, and TRW is entitled to summary

judgment on Count Two.[24]

It is beyond dispute that the parties intended that Old Chrysler would assume and assign

all of its TRW contracts and orders to New Chrysler except for the five purchase orders that were

specifically excluded in the *June 18 Notice.*  Old Chrysler was selling all or substantially all of

its operating assets to New Chrysler, liquidating, and did not need its TRW contracts.  The

parties were still trying to reconcile or resolve open or disputed items, and the *Cure Agreement*

allowed that process to continue while TRW and New Chrysler engaged in new business.  The

*Cure Agreement* provided for the prompt payment of the undisputed portions of the cure,

established a procedure for resolving the disputed portions and ensured that the parties would

continue to operate under the assigned agreements pending the resolution of those disputes.

---

[23]     TRW cited New York law governing the interpretation of contracts.  (*See TRW Summary Judgment Brief* at ¶¶ 15-17.)  Although the Purchase Agreement was governed by New York law, (Purchase Agreement at § 11.08), Masquat contends that the *Cure Agreement*, which is silent on the subject, is governed by Michigan law.  The rules governing the interpretation of contracts in Michigan and New York are essentially the same.  *See, e.g., West Town Line Assocs., LLC v. Mack & Meldrum Assocs., LLC*, No. 288384, 2010 WL 785938, at *2 (Mich. Ct. App. Mar. 9, 2010) (discussing the Michigan rules governing the interpretation of a contract on a motion for summary disposition).

[24]     My conclusions regarding the meaning of the *Cure Agreement* generally and paragraph 5 specifically are not informed by the *Doran Affidavit,* which attested to his own understanding of what New Chrysler intended.  The *Doran Affidavit* does not indicate that New Chrysler's intention was ever discussed among the parties, and the undisclosed, subjective intention of a contracting party is not probative on the issue of the contract's meaning. *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 300 (S.D.N.Y. 1998).

The *Cure Agreement* specified various categories of claims that comprised the possible cure amount.  These included the Undisputed Cure Amounts (the undisputed pre-petition obligations owed to TRW and the amount owed on account of two TRW cancellation claims), (*Cure Agreement* at ¶ 2), Unvouchered Goods (charges that had not been entered on Old Chrysler's accounts payable system), (*id.* at ¶ 3), Dishonored Payments (items paid with checks that bounced, (*id.*), Post-Petition Claims, (*id.*), and Disputed Cure Amounts, consisting of alleged damages relating to a breach of the right of first refusal granted to TRW under a November 2, 2008 Letter Agreement and TRW's cancellation of certain other claims.  (*Id.* at ¶ 4.)[25]  New Chrysler agreed to pay the Undisputed Cure Amount on or before June 28, 2009, and upon receipt of payment, TRW agreed to withdraw its objection to the proposed cure.  (*Id.* at p. 5.)  New Chrysler also agreed to pay the amounts owed in connection with the Unvouchered Goods and Dishonored Payments upon reconciliation and Post-Petition Claims in the ordinary course of business.

The *Cure Agreement* also established a procedure for resolving Disputed Cure Amounts.  Schedule A set out tight deadlines for discovery, briefing, motions *in limine* and trial before the Bankruptcy Court.  Once the Disputed Cure Amount was resolved and became an Undisputed Cure Amount, New Chrysler would pay it within ten days.  (*Id.* at ¶ 8.)  Pending resolution of the disputes and payment of the undisputed amounts, TRW agreed to perform under the assigned agreements.  (*Id.* at ¶¶ 6, 7.)

TRW understood that the cure amount would be reduced by offsets attributed to claims that Old Chrysler asserted against TRW, and insisted on assurances that it would have no further

---

[25]     The *Cure Agreement* also identified specific disputes, and dealt separately with their payment.  (*See Cure Agreement* at ¶ 3 (discussing the payment for past due amounts relating to plants resuming operations).)

liability for pre-closing claims.  Paragraph 5 of the *Cure Agreement* addressed TRW's demand;
but for the Excepted Claims, Old Chrysler and New Chrysler acknowledged the satisfaction of
any pre-closing claims against TRW.  Paragraph 5 did not address the assignment of claims to
New Chrysler or their retention by Old Chrysler, and nothing in its language indicated that the
parties had strayed from their clearly expressed intention that Old Chrysler would assume and
assign all of its contracts and orders other than the five excluded purchase orders.  In fact, the
*Cure Agreement* recited that all of the Agreements between Old Chrysler designated in the
Assignment Notice would be assumed and assigned to New Chrysler, and that "[o]n and after the
Closing Date, the Agreements shall be in effect between Purchaser and TRW in accordance with
their terms."  (*Id.* at pp. 1-2.)

Furthermore, the only reasonable interpretation of the *Cure Agreement* is the one
proffered by TRW.  New Chrysler had assumed Old Chrysler's liability in connection with
vehicles manufactured prior to the closing in several discrete areas:  factory warranties,
warranties under extended service contracts, products liability claims arising from accidents, and
Lemon Law claims.  *Burton v. Chrysler Group, LLC* (*In re Old Carco LLC*), 492 B.R. 392, 396-
97 (Bankr. S.D.N.Y. 2013).  Hence, New Chrysler had a continuing obligation, with limitations,
to repair defects in vehicles manufactured by Old Chrysler and answer for certain product
liability claims resulting in death, personal injury and property damage.

The "known" indemnification claims against TRW had already been addressed through
the reconciliation process or the procedure for resolving disputed claims.  The parties could not
reconcile or resolve "unknown" claims.  If a future need arose to repair a defective steering
mechanism manufactured by TRW pre-closing under a contractual warranty, because of a recall
or pursuant to a Lemon Law, or pay product liability damages, it would be reasonable for the

parties to agree that New Chrysler could look to TRW for indemnification.  The Excepted

Claims carved out unknown warranty, product liability and recall indemnification claims against

TRW as well as unknown claims relating to campaign and intellectual property infringement

indemnification.

Conversely, Masquat's interpretation is supported neither by its language nor common

sense.  Old Chrysler was going out of business.  It would not fix any steering mechanisms that

became defective in the future or satisfy future products liability damage claims from the

minimal assets, if any, left to the estate after the payment of higher priority claims.[26]  There was

no reason for Old Chrysler to retain unknown indemnification or other claims against TRW.

Accordingly, the Court concludes that the Excepted Claims were transferred to New

Chrysler.  While I intimated in the *TRW Decision* that Old Chrysler retained the Indemnification

Claim against TRW, I was not aware of the *Cure Agreement*, and that conclusion was wrong.

Finally, in light of the award of summary judgment on Count Two, it is unnecessary to reach

TRW's alternative contention in Count One that the Indemnification Claim was not an

"unknown" claim within the meaning of Paragraph 5.

---

[26]    In fact, the *Plan*, confirmed less than one year later, did not distribute any cash to the unsecured class.
Instead, if the unsecured creditor class (Class 3A) accepted the *Plan*, the class received a *pro rata* share of any net
proceeds recovered by the Liquidation Trust in a litigation initially brought by the Official Committee of Unsecured
Creditors against Daimler AG (Adv. P. No. 09-00505).  (*See Plan* at 8.)  That lawsuit was subsequently dismissed.
*See Liquidation Trust v. Daimler AG*, 509 F. Appx. 77 (2d Cir. 2013).

The parties are directed to settle an order on notice and schedule a conference to discuss

the disposition of the third –party claim.


Dated: New York, New York
      April 13, 2015


/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge